## LUND v. SCHUERMANN

——

(May 28, 1928.   Opinion and Decree.)

——

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625.**
The judgment of the trial court will be affirmed unless shown to be manifestly erroneous.

Appeal from the Civil District Court. Hon. E. K. Skinner, Judge.

Action by Felix Lund, et al., against Mrs. John P. Schuermann.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

George Piazza, of New Orleans, attorney for plaintiff, appellee.

Woodville & Woodville, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J.   The plaintiff sued on behalf of his minor son George for $1269 damages.   He alleged that on May 10, 1924, at about eight o'clock a. m., his son was standing upon the neutral ground proper of Tulane Avenue, at the intersection of Dupre Street, on the uptown river side, waiting for a river bound street car; that while so standing an automobile driven by the defendant, Mrs. John P. Schuermann, ran upon the neutral ground where his son was standing and knocked him down; that defendant was driving her automobile upon the uptown roadway of Tulane Avenue in the direction of the river; that his son received the following injuries:   A bruised face and jaw, and left knee, and general contusions of the body; that he was confined within the Charity Hospital for one day and continued to be treated there for three weeks; that he suffered intense physical pain and mental anguish, and walked with difficulty during three months; that at the time of the injury he was employed as a collector and earned $16 a week, and was disabled during four weeks and deprived of his salary and paid $5 for medicines.

The defendant admitted that plaintiff's son was standing upon the neutral ground but denied all the other allegations of the petition.   Further answering the defendant alleged that on the date alleged in plaintiff's petition she was driving upon the uptown roadway of Tulane Avenue and upon approaching Dupre Street noticed plaintiff's son and a lady standing at the intersection of the neutral ground, apparently waiting for a street car; that she was running at a very slow speed; that another automobile, going at a rapid speed, attempted to pass defendant on the right side; that on approaching defendant's car this automobile cut in front of defendant's car in order to avoid a truck that was parked along the curbing next to the corner; in so doing the left front wheel of said automobile struck the right front wheel of defendant's car shoving it upon the neutral ground and making it strike plaintiff's son; that the fault was with the driver of this automobile and not with her.

Judgment was rendered in favor of defendant.

The plaintiff moved for a new trial alleging that since the trial of the case

he had discovered the names of the occupants of the automobile mentioned by the defendant, and that they would swear that they did not strike the defendant's car, but that the defendant's car ran into them while she was attempting to pass them, and that defendant's car struck plaintiff's son.

The new trial was granted.

Upon the new trial, judgment was rendered in favor of plaintiff for $300.

From this judgment the defendant has appealed.

On behalf of plaintiff six witnesses were examined:

1st. Miss Yvonne Sougeron, bookkeeper at the Whitney Bank, testified that she lived at 7317 Sycamore Street; that on May 10, 1924, at about 8 o'clock she was going to work riding in a Ford coupe on Tulane Avenue towards Canal (on the river); the defendant's automobile was behind her, and passed her on the left hand side; in attempting to do so the defendant's right front wheel locked the left front wheel of witness' car, and defendant pulled to the left and went to the neutral ground where she hit the boy; the witness' car pulled to the right, never pulled to the left; the defendant blew no horn; the witness' brother was driving their car; besides herself in the car was her sister; they were all three going to work; her sister was due at 8, herself and her brother at 8:30; her brother sat on the left and her sister on the right; witness did not notice a truck pulled up by the sidewalk at the corner; she did not see the boy as he was struck; she saw him only after he had been picked up; she was not running faster than usual.

2nd. Miss Lucille Sougeron was employed at the Louisiana Red Cypress Company as stenographer for the last 12 years;

her brother was at the wheel, she sat next to him, and her sister on her right; she is due at her work at 8; the defendant was running fast.

The balance of her testimony corroborates her sister Yvonne.

3rd. George Sougeron was employed at the machinery sales department of A. M. Locket and Co., he was driving the car; about one-half of the block before Dupre Street he heard a car back of him blowing for the right of way; he pulled over to the right to allow the car to pass on the left; near Dupre Street the defendant's car hit his left front wheel when he pulled over to the right and passed a truck that was parked to the right of the road; he was running about 15 miles an hour; his car was hit with such force that it almost upset it; it was about a quarter of 8; the collision occurred on the lake side of Dupre Street; he has not been sued by Lund; he is 21 years of age, and was 19 at the date of the accident; he has been driving automobiles about six years. The balance of his testimony corroborates his two sisters.

4th. Miss Lillian Lund was standing on the downtown side of Tulane Avenue neutral ground waiting for a car going from the river to the Cloverland Dairy where she was working as a bookkeeper. She thus explains the accident: "The only thing I saw is there was a Ford coupe driving ahead and there was big sedan coming behind the Ford and the only thing I saw is when the sedan came into the neutral ground and knocked my brother down and swerved again;" her brother was standing upon the neutral ground proper; upon the uptown side on the town side, waiting for a street car going towards the river; she did not see the collision between the cars. Her brother had his face and jaw

scratched and his knee sprained and terribly swollen.

5th. George Rojas is a pharmacist in the employ of Katz and Besthoff for the last five years; at the time of the accident he was standing on the neutral ground on the uptown river side waiting for a car running towards the river; together with him were his wife and the plaintiff's son; he describes the accident as follows: "There was a Ford coupe and a sedan coming and it looked to me as if the Ford coupe was about to come to a stop, and the sedan in the back of the coupe, to my knowledge from looking at it, looked as though she tried to go ahead of the coupe, and she hit the front portion of his Ford coupe and knocked this boy down, as I grabbed my wife and pulled her out of the way to keep it from hitting her and myself." He is positive the Ford coupe did not turn towards the neutral ground; no portion of the boy's body was extending into the street; the Ford coupe was in front of the sedan and the sedan was behind; "the sedan was in the back of the coupe and he was in the middle of the street, and she was trying to get ahead of him; the sedan hit the front left wheel of the coupe; the Ford was in front of the sedan about the middle of the street and the sedan was trying to get ahead of him and as she did, she hit the front left wheel of the Ford; if the car in the back had stopped and didn't try to get ahead of the Ford, there wouldn't have been an accident.

6th. George Lund, the plaintiff's son, is 20 years of age; was rent collector for Carrere Real Estate Company. He was standing on the neutral ground waiting for a car to go to work; his knee joint, and his jaw and face were hurt, contusions, bruises, sprain, and swelling, after the accident he was taken to the Charity Hospital where he stayed for about nine hours; X-ray picture and bandages and serum; could not go to work for four weeks; could not walk; went to hospital three times a week for four weeks; was earning $16 a week; he was in bed when Schuermann visited him.

Opposed to those six witnesses is the testimony of two witnesses to the accident and two to the injury.

The defendant, Mrs. Beulah Schuermann, testified as follows:

"It was on May 10, 1924, about five minutes of eight in the morning. I brought my husband to work on Tulane and Carrollton Avenues, and having with me my 23 months old grandson and having nothing to do, going slowly, going on Tulane Avenue, all the way in about 15 miles an hour. Just before I reached Dupre Street there was a Ford behind me, and I could hear his engine raising up and just as I got to Dupre Street he tried to pass me on the right, and not seeing the truck was at the corner parked, he hit my front hub and threw me on the neutral ground and I stepped on my brakes where I was, my bumper coming in contact with Mr. Lund."

August L. Hady is engaged in the ice business in a truck and wagon; on the morning of the accident he was standing on the front platform of a Tulane car going out Tulane Avenue.

When about 125 feet from the corner of Dupre Street he saw the accident. He describes it as follows:

"This lady here (indicating defendant) was proceeding out Tulane Avenue towards Canal in a Hupmobile, I think, and there was a truck standing on the corner of Dupre and Tulane Avenue in front of a grocery store, and there was a Ford coupe coming and just when it got near the corner, the Ford coupe tried to pass in between the truck and the Hupmobile, and they collided the two front wheels, the left front wheel of the Ford and the right front wheel of the Hupmobile causing the Hupmobile to swerve to the left. * * * The

Ford coupe tried to pass in between the Hupmobile and the truck and his left front hub cap struck her right hub."

Defendant's husband did not see the accident. He visited the plaintiff's son the day after the accident. The son came to him unassisted, but after he discovered who he was he walked to the mantlepiece and got a stick; he said his knee was a little stiff and he had a brush burn; he rolled up his pantaloons and showed the bandages; there was nothing on his face except a smile.

H. Kaul is Shuermann's son-in-law; in company with his father-in-law he called on the plaintiff's son; he was walking and when they mentioned who they were he got a walking stick; he said his knee was a little stiff, but outside of that he was all right; he did not see any bandage on his knee; he did not show the bandage on his knee.

The testimony of the defendant as to the manner of the collision, loses much of its weight contradicted as it is by that of disinterested witnesses.

The testimony of the witness, Kaul, is contradicted by that of Lillian Lund and of the three Sougerons and especially by that of the disinterested witness, Rojas. It is true that the Sougerons have a moral interest in absolving themselves from any blame in the matter; but at the time the case was tried their possible pecuniary liability had been extinguished by prescription. If the defendant had been blameless, why should her husband and her son-in-law have called upon the plaintiff's son the day after the accident?

The scales are turned against the defendant by the judgment of the trial court.

But the amount of the judgment seems to us excessive. The plaintiff's son lost four weeks' wages at $16, making $64, and suffered a sprained knee with slight pain during four weeks. We will reduce the judgment to $200. The injuries to the face seem negligible.

It is therefore ordered that the judgment herein be reduced in capital from three hundred to two hundred dollars and as thus amended that it be affirmed, at the cost of defendant in both courts.